413 F.Supp. 113 (1976)
UNITED STATES of America, Plaintiff,
v.
Dr. Louis S. ZWICK and Louis S. Zwick, M.D., Inc., Defendants.
No. C 76-23 A.
United States District Court, N. D. Ohio, E. D.
April 27, 1976.
*114 D. D. Weisberger, Asst. U. S. Atty., Cleveland, Ohio, for plaintiff.
Minor Myers, Akron, Ohio, Leonard P. Gilbert, Cleveland, Ohio, for defendants.

CONSENT DECREE FOR DECLARATORY JUDGMENT AND ORDER OF PERMANENT INJUNCTION
CONTIE, District Judge.
The Plaintiff, United States of America having filed its Complaint against the Defendants, Dr. Louis S. Zwick and Louis S. Zwick, M.D., Inc., for violations under Title 21, United States Code, Section 828(e) and Section 353, and while said Defendants deny any violation of the aforesaid Title 21, United States Code, Section 828(e) and Section 353, nevertheless, consent to the entry of the following Order:
This Court having examined the Court file, being fully advised in the premises finds that the Court has jurisdiction over the subject matter herein and of the parties hereto as alleged in Plaintiff's Complaint, and finds that the Defendants consent to the entry of this declaratory judgment and order of permanent injunction personally, and by and through their counsel.
The Court further finds that the Defendants by means of order forms issued under Title 21, United States Code, Section 828 obtained anorectic controlled substances through interstate commerce in the amount of 3,886,634 dosage units from October, 1972 through October, 1975 for the purpose of dispensing in the conduct of his medical bariatric practice which involved a substantial number of patients who were being treated for obesity. Further, that the aforesaid medication was in fact dispensed to the Defendants' patients in unlabeled *115 packets each containing 30 anorectic dosage units of controlled substances, pursuant to his bariatric practice from October, 1972 through October, 1975 which practice continues to the present time.
The Court finds that a legal issue exists as to the circumstances under which it may become unlawful for a physician under Title 21, United States Code, to dispense or prescribe anorectic controlled drugs described therein in the treatment of obesity to a large number of patients whereby the cumulative and accrued affect is that large quantities of controlled anorectic substances are thereby prescribed or dispensed, in that under some circumstances such dispensing or prescribing may be outside the practice of medicine in the treatment of obesity.
To resolve this legal issue it is necessary for the Court to declare the minimum medical diagnostic requirements, tests and procedures and the medically accepted standards that must be met and performed by any physician involved in treating patients for obesity and dispensing of scheduled anorectic drugs which are controlled substances regulated by Title 21 of the United States Code and Title 21 of the Code of Federal Regulations.
IT IS THEREFORE ORDERED, ADJUDGED, DECREED AND DECLARED:
For the physician, the obese patient poses one of the most complex problems he is likely to confront. Obesity itself presents as a spectrum ranging from mildly inconvenient and/or unattractive "overweight" to massive and often lifethreatening excess poundage. Its treatment likewise involves measures ranging from relatively modest dietary restriction to intestinal surgery. Above all, obesity almost invariably involves a complex interplay between physiology and behavior, so that the physician must perforce combine purely physiologic and medical measures with the skills of the psychologist and educator. Largely for this reason there is no "standard" treatment that will serve to manage most obese patients or even a large fraction of them. In each case, treatment must be geared to the specific problems, habits, personality, and life-style of the patient. Therefore, the treatment of obesity requires an eclectic approach by the physician.
It is further declared that the minimum medical standards of practice for physicians treating obesity by dispensing and prescribing large quantities of controlled anorectic drugs is not met where they are dispensed and prescribed to a large number of patients as a standard treatment, nor are they met by only taking the pulse, blood pressure, weight, stethoscopic examination of the patient, a five minute personal interview with the physician, a casual concern as to possible dependency or addiction of the patient to anorectic drugs, and the delivery of a recommended diet to the patient on any office visit.
The decision to use an anorectic drug in any patient can only be made after evaluation of the patient's needs and the risks which such drugs pose to the patient, and a determination as to whether the benefit from the use of such drugs outweighs those risks.
Since no medical authority disagrees over the need to individualize the treatment of obesity, it follows that in a practice where a large number of patients are treated for obesity, there will be significant variations in the approach to treatment. It is prima facie improper for a single approach to be used. It is improper that the prescribing and dispensing of anorectic drugs be included as a routine part of the treatment of obesity. In other words, it is not proper for the physician dispensing and prescribing anorectic controlled drugs to adopt a unitary approach to the treatment of obesity in that no standard approach to treatment exists.
The Court declares that the standards of medical practice and other modalities of care and treatment of obesity and the use of anorectic drugs is set forth, including but not limited to, the following publications:

Obesity in Perspective, by The Fogarty Conference, sponsored by the John E. Fogarty *116 National Center for Advanced Study in Health Sciences, edited by George A. Bray, M.D., National Institutes of Health, October 1-3, 1973, Bethesda, Maryland, DHEW publication NIH 75-708, Superintendent of Documents, U. S. Government Printing Office, Washington, D. C. 20402

Influence of Obesity on Health, by George V. Mann, M.D., Vanderbilt University School of Medicine, Nashville, Tennessee, appeared in the July 25, 1974 New England Journal of Medicine, pages 178-185, and the New England Journal of Medicine, August 1, 1974, pages 226-232
The bariatric standards set forth in the appendix hereto.

The Management of Obesity, by Thaddeus S. Danowski, University of Pittsburgh, appeared in the April, 1976 issue of Hospital Practice, Volume 11, Number 4.

Textbook of Medicine, Volume II, edited by Paul B. Beeson and Walsh McDermott, W. B. Saunders Co., publisher, 1975. The article on obesity is by Professor M. J. Albrink of the W. Va. School of Medicine in Morgantown, W. Va.

Harrison's Principles of Internal Medicine, 7th edition, edited by Maxwell Wintrobe and 5 others. McGraw-Hill, publishers, 1974. The article on obesity is by one of the editors, Professor George W. Thorne, of Harvard Medical School, Boston, Massachusetts.
The Court finds that the Food and Drug Administration regulations as set forth in Title 21 of the Code of Federal Regulations, Section 310.504 is well taken as attached hereto and is incorporated by reference as though fully rewritten herein.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Defendant, Dr. Louis S. Zwick and the Defendant, Louis S. Zwick, M.D., Inc., its agents, officers, employees and all persons under its control are hereby restrained and enjoined from violating the within orders of this Court.

*117 APPENDIX
 *118